Filed
07 November 15 P3:54
Margaret G. Montemay~
District Clerk
Bexar District

NO. _2007CI17232_

| | | |
|---|---|---|
| PROMUS HOTEL CORPORATION, now known as PROMUS HOTELS PARENT LLC; DOUBLETREE LLC AS SUCCESSOR-IN-INTEREST TO RFS, INC. AND DT MANAGEMENT, INC. | § § § § § § | IN THE DISTRICT COURT OF |
| **PLAINTIFFS** | § § | |
| VS. | § § | **BEXAR COUNTY, TEXAS** |
| STERLING USA, INC.; SAMOTH USA, INC.; STERLING CENTRECORP, INC.; STERLING CENTRECORP (FLORIDA), INC.; MASTER PREFERRED HOTELS, L.P. AND PREFERRED RIVERWALK, L.P. | § § § § § § | |
| **DEFENDANTS** | § | 37 _____ JUDICIAL DISTRICT |

## ORIGINAL PETITION

### I.

### DISCOVERY LEVEL

1.      Discovery in this case is intended to be conducted under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

### II.

### PARTIES

2.      Plaintiff Promus Hotel Corporation, now known as Promus Hotels Parent LLC ("Promus"), is a limited liability corporation organized under the laws of the State of Delaware.

3.      Plaintiff Doubletree LLC is the successor-in-interest to RFS, Inc. and is a limited liability corporation organized under the laws of the State of Delaware.

4.      Plaintiff DT Management, Inc. is a corporation organized under the laws of the State of Arizona.

5.      Defendant, Sterling USA, Inc. is a foreign corporation organized under the laws of the State of Nevada and may be served with citation by serving its registered agent for service of process, Capitol Corporate Services, Inc., 202 South Minnesota Street, Carson City Nevada 89703. **Said citation on Sterling USA, Inc. will be served through the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701,** as its agent because defendant, who has engaged in business in Texas, does not maintain a regular place of business in this state or a designated agent for service and this suit arose from defendant's business in this state.

6.      Defendant, Samoth USA, Inc. is a foreign corporation organized under the laws of the State of Nevada and may be served with citation by serving its registered agent for service of process, Capitol Corporate Services, Inc., 202 South Minnesota Street, Carson City Nevada 89703 and/or its officer, Brian Kosoy at his principal place of business, One North Clematis Street, Suite 305, West Palm Beach, Florida 33401. **Said citation on Samoth USA, Inc. will be served through the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701,** as its agent because defendant, who has engaged in business in Texas, does not maintain a regular place of business in this state or a designated agent for service and this suit arose from defendant's business in this state.

7.      Defendant, Sterling Centrecorp Inc., is an inactive foreign corporation organized under the laws of the State of Florida and may be served with citation by serving its officer Brian Kosoy at his principal place of business, One North Clematis Street, Suite 305, West Palm Beach, Florida 33401. **Said citation on Sterling Centrecorp, Inc. will be served through the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701,** as its agent because defendant, who has engaged in business in Texas, does not maintain a regular place of business in this state or a designated agent for service and this suit arose from defendant's business in this

state.

8.      Defendant, Sterling Centrecorp (Florida) Inc., is an inactive foreign corporation organized under the laws of the State of Florida and may be served with citation by serving its officer Brian Kosoy at his principal place of business, One North Clematis Street, Suite 305, West Palm Beach, Florida 33401. **Said citation on Sterling Centrecorp (Florida), Inc. will be served through the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701,** as its agent because defendant, who has engaged in business in Texas, does not maintain a regular place of business in this state or a designated agent for service and this suit arose from defendant's business in this state.

9.      Defendant Master Preferred Hotels, L.P. ("Master Preferred") is an inactive foreign limited partnership organized under the laws of the State of Delaware and may be served with citation by serving its registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801 and its officer Brian Kosoy at his principal place of business, One North Clematis Street, Suite 305, West Palm Beach, Florida 33401. **Said citation on Master Preferred will be served through the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701,** as its agent because defendant, who has engaged in business in Texas, does not maintain a regular place of business in this state or a designated agent for service and this suit arose from defendant's business in this state.

10.     Defendant, Preferred Riverwalk, L.P. is an inactive foreign limited partnership organized under the laws of the State of Delaware and may be served with citation by serving its registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801 and its officer Brian Kosoy at his principal place of business, One North Clematis Street, Suite 305, West Palm Beach, Florida 33401. **Said citation on Preferred Riverwalk L.P. will**

be served through the **Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701,** as its agent because defendant, who has engaged in business in Texas, does not maintain a regular place of business in this state or a designated agent for service and this suit arose from defendant's business in this state.

## III.

## NATURE OF THE CASE

11.     This is a civil action for breach of contract under Texas Civil Practice and Remedies Code Section 38.001 et seq. and for declaratory judgment under Texas Civil Practice and Remedies Code Section 37.001 et seq. arising out of Defendants refusal to comply with and failure to acknowledge ongoing contractual obligations under a Settlement and Release Agreement executed in settlement of a lawsuit entitled Samoth USA, Inc., et al. v. Promus Hotel Corporation, et al.; Cause No. 2000 CI07843; In the 408th Judicial District Court, Bexar County, Texas (the "Bexar County Case").

12.     Plaintiffs seek among other relief: 1) monetary damages for the harm caused by Defendants breach of their contractual obligations under the Settlement and Release Agreement; and 2) a declaration of the duties and responsibilities of Defendants under the Settlement and Release Agreement to provide certain financial information to Plaintiffs regarding Master Preferred Hotels, L.P.

## IV.

## JURISDICTION AND VENUE

13.     The relief sought by Plaintiffs is subject to the jurisdiction of this Court because the claims asserted herein arise from a Settlement and Release Agreement executed in settlement of a lawsuit filed in this county.   The damages suffered by Plaintiffs exceed the minimum jurisdictional requirements of the Court.   Venue is proper in this Court because all or a substantial part of the

events giving rise to this cause of action occurred in Bexar County and because the Agreement at issue acknowledges jurisdiction and venue is proper in Bexar County.

## V.

## FACTUAL BACKGROUND

14.     In early 2001, RFS, Inc. initiated an arbitration action in Memphis Tennessee against Master Preferred for breach of a Settlement Agreement dated April 1, 1999 (the "Loan Default Settlement"). The Loan Default Settlement set forth terms for repayment of a Promissory Note dated June 21, 1996.  The arbitration panel found that Master Preferred had breached the terms of the Loan Default Settlement and failed to fulfill its payment obligations, and on May 14, 2002, RFS received an arbitration award in the amount of $2,029,489.62 (the "Arbitration Award"). This Arbitration Award would later be incorporated into a settlement of the Bexar County Case.

15.     On May 26, 2000, Samoth USA, Inc.[1] , Master Preferred Hotels, L.P. and Preferred Riverwalk, L.P. (the "Samoth Entities") filed the Bexar County Case against Promus Hotel Corporation, RFS, Inc., DT Management, Inc. (the "Promus Entities") and others for property damage to a hotel incurred as a result of a 1998 flood. (See Samoth USA, Inc., et al. v. Promus Hotel Corporation, et al.; Cause No. 2000 CI07843; In the 408th Judicial District Court, Bexar County, Texas.) On or about September 13, 2002, the parties to that lawsuit executed a Settlement and Release Agreement in full and final satisfaction of the claims asserted therein. Under the terms of the Settlement and Release Agreement, Master Preferred agreed to entry of a final judgment in favor of RFS, Inc. and against Master Preferred in the amount of $1,838,339.62 plus interest, such being the amount awarded in the arbitration proceeding discussed above. In addition, the terms of the Loan

---

[1]        On information and belief, Sterling Centrecorp, Inc., Sterling Centrecorp (Florida) Inc. and/or Sterling USA, Inc are successors-in-interest to Samoth USA, Inc.

Default Settlement were incorporated into the Settlement and Release Agreement. An Agreed Final Judgment reflecting the terms of the Settlement and Release Agreement was entered on December 26, 2002.

16.   Under the terms of the Settlement and Release Agreement, and in exchange for the Promus Entities' agreement not to execute on the Agreed Final Judgment until July 1, 2007, the Samoth Entities agreed, among other things,  to provide Plaintiffs with (1) certain financial information pertaining to Master Preferred and its hotel operations; (2) advance notice of any transfer of any hotel owned in whole or in party by Master Preferred; and (3) notice of any material change in ownership of any entity owned or controlled by Master Preferred. The Samoth Entities' obligation to provide this financial information continues until the Agreed Final Judgment is paid in full.

## VI.

## BREACH OF THE SETTLEMENT AGREEMENT

17.     Plaintiffs have complied with and fulfilled their obligations under the Settlement and Release Agreement by not attempting to execute on the Agreed Final Judgment prior to July 1, 2007.  By letter dated August 2, 2007, Plaintiff RFS, Inc. requested payment and financial information as per the Settlement and Release Agreement and Agreed Final Judgment. No payment or financial information has been forthcoming. Master Preferred has failed and/or refused to pay in accordance with the terms of the Settlement and Release Agreement. In addition, all Defendants have failed and/or refused to provide the financial information as requested. In fact, Defendant Sterling Centrecorp. Inc. and its affiliates (as successor corporation to Samoth USA, Inc.), has denied its obligations under the Settlement and Release Agreement.

18.     Further, Defendants have failed to provide advance notice of any transfer of assets and/or material change in ownership of any entity owned or controlled by Master Preferred as required by

the Settlement and Release Agreement.

19.     Plaintiffs have incurred and continue to incur damages and financial loss as a result of Defendants refusal and/or failure to provide the information requested. Plaintiffs have given notice to Defendants that they are in default of their obligations under the terms of the Settlement and Release Agreement. Plaintiffs have given Defendants sufficient time to cure their default. Defendants have refused to comply and are in breach of contract. Breach of these provisions is by definition a material breach of the Settlement and Release Agreement entered in the Bexar County Case.

20.     As a direct and proximate result of Defendants' actions and inactions, Plaintiffs have suffered damages and continue to suffer damages. Defendants are liable to Plaintiffs in an amount to be proven at trial for all losses, damages, expenses, costs, liabilities, including but not limited to reasonable attorneys' fees, and both pre-judgment and post-judgment interest.

**VII.**

**DECLARATORY JUDGMENT**

21.     Plaintiff incorporates Paragraphs 1- 20, as if fully set forth herein.

22.     An actual, present and justiciable controversy exists between the parties as to Defendants' obligations under the Settlement and Release Agreement.  Defendants dispute some or all, of the obligation outlined in the preceding paragraphs. A declaratory judgment will resolve some or all, of the disputed issues and controversies.

23.     Pursuant to the Texas Uniform Declaratory Judgment Act, Texas Civil Practice & Remedies Code, Section 37.001 et seq., Plaintiffs seek a judicial determination that Defendants are obliged to provide the information as set forth in the Settlement and Release and are in material breach of the Settlement and Release.

24.    Plaintiffs also seek recovery of their reasonable attorneys' fees pursuant to Texas Civil Practice & Remedies Code, Sections 37.009 and/or 38.001.

## VIII.

## CONDITIONS PRECEDENT

25.    All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

## IX.

## JURY DEMAND

26.    Plaintiffs demand a trial by jury.

## X.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs requests Defendants be cited to appear and answer, and that on final trial, Plaintiffs have:

a.    Judgment against Defendants for Plaintiffs' damages set forth above, in an amount within the jurisdictional limits of this Court;

b.    Declaratory Judgment determining the obligations of Defendants under the Settlement and Release Agreement;

c.    Pre-judgment and post-judgment interest on Plaintiffs' damages as allowed by law;

d.    Costs of court;

e.    Attorneys' fees, and

f.    Such other and further relief to which Plaintiffs may be entitled.

Respectfully submitted,

**GERMER GERTZ BEAMAN & BROWN, L.L.P.**
301 Congress Avenue, Suite 1700
Austin, Texas 78701
512/472-0288
512/72-0721 (Facsimile)

By: _____
      Mark T. Beaman
      State Bar No. 01955700
      J. Mitchell Smith
      State Bar No. 18626900
      Lori Pate Daves
      State Bar No. 00795099

**ATTORNEYS FOR PLAINTIFFS**

NO. _____

| | | |
|---|---|---|
| PROMUS HOTEL CORPORATION,<br>now known as PROMUS HOTELS<br>PARENT LLC; DOUBLETREE LLC<br>AS SUCCESSOR-IN-INTEREST TO<br>RFS, INC. AND DT MANAGEMENT,<br>INC. | § <br>§ <br>§ <br>§ <br>§ <br>§ | IN THE DISTRICT COURT OF |
| PLAINTIFFS | § <br>§ | |
| VS. | § <br>§ | BEXAR COUNTY, TEXAS |
| STERLING USA, INC.; SAMOTH USA,<br>INC.; STERLING CENTRECORP, INC.;<br>STERLING CENTRECORP (FLORIDA),<br>INC.; MASTER PREFERRED HOTELS,<br>L.P. AND PREFERRED RIVERWALK, L.P.<br>DEFENDANTS | § <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ | \_\_\_\_\_ JUDICIAL DISTRICT |

## REQUEST FOR DISCLOSURE

Pursuant to Tex. R. Civ. P. 194, you are requested to disclose, after fifty (50) days of the service of this request, the information or material described in Rule 194.2.  Said requests are itemized below:

(a)     the correct names of the parties to the lawsuit;

(b)     the name, address, and telephone number of any potential parties;

(c)     the legal theories and, in general, the factual bases of the responding party's claims or defenses;

(d)     the amount and any method of calculating economic damages;

(a)     the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case;

(f)     for any testifying expert:

(1)     the expert's name, address, and telephone number;

(2)     the subject matter on which the expert will testify;

(3)     the general substance of the expert's mental impressions and opinions and

a brief summary of the basis for them, or if the expert is not retained by,

employed by, or otherwise subject to the control of the responding party,

documents reflecting such information;

(4)     if the expert is retained by, employed by, or otherwise subject to the

control of the responding party:

(A)     all documents, tangible things, reports, models, or data

compilations that have been provided to, review by, or prepared by

or for the expert in anticipation of the expert's testimony; and

(B)     the expert's current resume and bibliography;

(g)     any indemnity and insuring agreements described in Rule 192.3(f);

(h)     any settlement agreements described in Rule 192.3(g);

(i)     any witness statements described in Rule 192.3(h)


Respectfully submitted,

**GERMER GERTZ BEAMAN & BROWN, L.L.P.**
301 Congress Avenue, Suite 1700
Austin, Texas 78701
512/472-0288
512/72-0721 (Facsimile)

By: _____
       Mark T. Beaman
       State Bar No. 01955700
       J. Mitchell Smith
       State Bar No. 18626900
       Lori Pate Daves
       State Bar No. 00795099

**ATTORNEYS FOR PLAINTIFFS**

NO. _____

| | | |
|---|---|---|
| PROMUS HOTEL CORPORATION, now known as PROMUS HOTELS PARENT LLC; DOUBLETREE LLC AS SUCCESSOR-IN-INTEREST TO RFS, INC. AND DT MANAGEMENT, INC. | § § § § § § § | IN THE DISTRICT COURT OF |
| **PLAINTIFFS** | § § | |
| VS. | § § | BEXAR COUNTY, TEXAS |
| STERLING USA, INC.; SAMOTH USA, INC.; STERLING CENTRECORP, INC.; STERLING CENTRECORP (FLORIDA), INC.; MASTER PREFERRED HOTELS, L.P. AND PREFERRED RIVERWALK, L.P. | § § § § § § | |
| **DEFENDANTS** | § | _____ JUDICIAL DISTRICT |

### PLAINTIFFS' FIRST REQUEST FOR PRODUCTION TO ALL DEFENDANTS

TO:   ALL DEFENDANTS.

COME NOW Plaintiffs in the above entitled and numbered cause, and pursuant to Rule 196, serves this their first Request for Production to all Defendants.

Respectfully submitted,

**GERMER GERTZ BEAMAN & BROWN, L.L.P.**
301 Congress Avenue, Suite 1700
Austin, Texas 78701
512/472-0288
512/72-0721 (Facsimile)

By: _____
Mark T. Beaman
State Bar No. 01955700
J. Mitchell Smith
State Bar No. 18626900
Lori Pate Daves
State Bar No. 00795099

**ATTORNEYS FOR PLAINTIFFS**

## DEFINITIONS

For purposes of these requests, the terms used herein shall have the following meanings:

A.      "Document" and "documents" shall be used in their broadest sense and shall mean and include all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto.  Without limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, communications, correspondence, letters, telegrams, telexes, messages, memoranda, records, reports, books, summaries, or other records of telephone conversations or interviews, summaries or other records of personal conversations, minutes or summaries or other records of meetings and conferences, summaries or other records of negotiations, other summaries, diaries, diary entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, financial statements, work sheets, work papers, drafts, graphs, maps, charts, tables, accounts, analytical records, consultants' reports, notices, marginal notations, notebooks, telephone bills or records, bills, statements, records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, canceled checks, letters of credit, envelopes or folders or similar containers, voucher analyses, studies, surveys, transcripts of hearings, transcripts of testimony, expense reports, microfilm, microfiche, articles, speeches, tape or disc recordings, sound recordings, video recordings, film, tapes, photographs, punch cards, programs, data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer generated, computer stored, or electronically stored matter, however and by whomever produced, prepared, reproduced, disseminated, or made.  The terms "document" and "documents" shall include all copies of documents by whatever means made, except that where a document is identified or produced, identical copies thereof which do not contain any markings, additions, or deletions different from the original need not be separately produced.  "document" and "documents" means and includes all matter within the foregoing description that is in the possession, control, or custody of plaintiff or in the possession, control, or custody of any attorney for plaintiff. Without limiting the term "control"  a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof.

## REQUESTS FOR PRODUCTION

1.      Any and all documents which refer or relate to any mergers, acquisitions, change of name, or dissolutions of the following entities, regardless of state where organized, from January 1999 to the present:

        a.      Samoth Capital Corporation;
        b.      Samoth U.S.A., Inc.;
        c.      Sterling Financial Corporation;
        d.      Samoth Equity Corporation;
        e.      Samoth Hotels, Inc.;
        f.      Sterling USA, Inc.;
        g.      Sterling Centrecorp, Inc.;
        h.      Sterling Centrecorp (Florida), Inc.;
        i.      Senior Preferred Hotels, L.P.;
        j.      Senior Preferred Hotels, Inc.;
        k.      Master Preferred Hotels, L.P.;
        l.      Master Preferred Hotels, Inc.;
        m.      Preferred Riverwalk, L.P.;
        n.      Preferred Equities, Ltd.;
        o.      Preferred Equity, US, Inc.; and
        p.      SCH Corp.

2.      An organizational chart for the following entities, regardless of state where organized,  from January 1999 to the present:

        a.      Samoth Capital Corporation;
        b.      Samoth U.S.A., Inc.;
        c.      Sterling Financial Corporation;
        d.      Samoth Equity Corporation;
        e.      Samoth Hotels, Inc.;
        f.      Sterling USA, Inc.;
        g.      Sterling Centrecorp, Inc.;
        h.      Sterling Centrecorp (Florida), Inc.;
        i.      Senior Preferred Hotels, L.P.;
        j.      Senior Preferred Hotels, Inc.;
        k.      Master Preferred Hotels, L.P.;
        l.      Master Preferred Hotels, Inc.;
        m.      Preferred Riverwalk, L.P.;
        n.      Preferred Equities, Ltd.;
        o.      Preferred Equity, US, Inc.; and
        p.      SCH Corp.

3.      Any and all documents that refer or relate in any way to the conveyance of  "interest and liabilities of Master Preferred Hotels, L.P." referenced in the correspondence from Glenn Hallman, attached hereto as Exhibit A.

4.      Any and all documents that refer or relate in any way to the Settlement Agreement, Mutual Release and Indemnification Agreement attached to the correspondence from Glenn Hallman, attached hereto as Exhibit B.

5.      Copies of all check registers, disbursement journals, monthly unaudited financial statements, bank statements with supporting reconciliations and a detailed accounting of all petty cash accounts maintained by or for the hotels listed on Exhibit A to the Settlement Agreement dated April 1, 1999 and executed by Master Preferred Hotels, Inc.

6.      Annual audited financial statements for 1999 to the present for the hotels listed on Exhibit A to the Settlement Agreement dated April 1, 1999 and executed by Master Preferred Hotels, Inc.

7.      Any and all documents which reflect any change in ownership from 1999 to the present of the hotels listed on Exhibit A to the Settlement Agreement dated April 1, 1999 and executed by Master Preferred Hotels, Inc.

8.      Updated flowcharts and diagrams setting forth the names, owners and respective ownership interests of any entities which possess an ownership or leasehold interest in any real or personal property of any hotel owned in whole or in part by Master Preferred Hotels, L.P.

9.      Any and all documents that refer or relate to assumption of liability associated with the Settlement and Release Agreement that is the subject of this lawsuit by any individual or entity.

10.     Financial statements for the following entities, regardless of state where organized, from January 1999 to the present:

        a.      Samoth Capital Corporation;
        b.      Samoth U.S.A., Inc.;
        c.      Sterling Financial Corporation;
        d.      Samoth Equity Corporation;
        e.      Samoth Hotels, Inc.;
        f.      Sterling USA, Inc.;
        g.      Sterling Centrecorp, Inc.;
        h.      Sterling Centrecorp (Florida), Inc.;
        i.      Senior Preferred Hotels, L.P.;
        j.      Senior Preferred Hotels, Inc.;
        k.      Master Preferred Hotels, L.P.;
        l.      Master Preferred Hotels, Inc.;
        m.      Preferred Riverwalk, L.P.;
        n.      Preferred Equities, Ltd.;
        o.      Preferred Equity, US, Inc.; and
        p.      SCH Corp.

10.     Any and all documents that refer, relate to, or identify the "subordinated noteholders" as that term is used in the Settlement Agreement, Mutual Release and Indemnification Agreement attached to the correspondence from Glenn Hallman, attached hereto as Exhibit B.

# GALLAGHER & KENNEDY

—— P.A. ——
### LAW OFFICES

**GLEN HALLMAN**
DIRECT DIAL: (602) 530-8471
E-MAIL: GH@GKNET.COM

2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
PHONE: (602) 530-8000
FAX: (602) 530-8500
WWW.GKNET.COM

August 9, 2007

*VIA FACSIMILE 1-512-472-0721*
*AND US MAIL*

Mark T. Beaman
GERMER, GERTZ BEAMAN & BROWN, LLP
301 Congress Avenue, Suite 1700
Austin, TX 78701

> **Re:**   *Samoth USA, Inc., et al. v. Promus Hotel Corporation, et al.*
> *Cause No. 2000 CI07843*
> *In the 408th Judicial District, Bexar County District Court*
> *Bexar County, Texas*

Dear Mark:

In response to your August 2, 2007 letter, and as I related in my voicemail, all interest in and liabilities of Master Preferred Hotels, L.P. were conveyed in 2004 to the Trustee for the subordinated note holders of that entity.

Accordingly, RFS, Inc.'s demands should be directed to:

> Steven Alan Sinkin, Trustee
> Sinkin & Barretto, PLLC
> 105 West Woodlawn
> San Antonio, TX 78212
> 210-732-6000

Thank you.

Sincerely,

**GALLAGHER & KENNEDY, P.A.**

By: _____
Glen Hallman

GH:kjh
1605770 / 8301-1

**EXHIBIT**

**A**

**GALLAGHER & KENNEDY**
P.A.
· LAW OFFICES ·

GLEN HALLMAN
DIRECT DIAL: (602) 530-8471
E-MAIL: GH@GKNET.COM

2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
PHONE: (602) 530-8000
FAX: (602) 530-8500
WWW.GKNET.COM

September 20, 2007

Mark T. Beaman
GERMER GERTZ BEAMAN & BROWN, LLP
301 Congress Avenue, Suite 1700
Austin, TX 78701

Re:    *Samoth USA, Inc., et al. v. Promus Hotel Corporation*

Dear Mark:

This letter is written solely on behalf of Sterlingcentre Corp. Inc. and its affiliates ("Sterling"), the successor corporation of Samoth USA, Inc., in response to your September 10, 2007 letter. Sterling denies any breach of the 2002 Settlement and Release Agreement (the "Settlement Agreement").

First, paragraph 11 of the Settlement Agreement expressly conditions any obligation to provide financial information to upon "written request from RFS." We are informed that your letter is the *first* such request since the execution of the Settlement Agreement in 2002.

As we informed you in our August 9, 2007 letter, all of Sterling's interests in Master Preferred Hotels, L.P. were conveyed in 2004 to the Trustee for the subordinated note holders of that entity. Enclosed is a copy of that March 31, 2004 Agreement (the "Assignment Agreement"). Accordingly, Sterling possesses no financial information of Master Preferred Hotels, L.P. subsequent to March 2004.

Second, paragraphs 12-17 of the Settlement Agreement all relate to transfer "of any hotel" owned by Master Preferred Hotels, L.P. As Recital (F) of the Assignment Agreement reflects, as of the date of the Assignment Agreement, Master Preferred Hotels, L.P. remained the owner of the limited partnerships owning the hotels as of March 2004. Accordingly, Sterling cannot be in breach of any of the provisions in the Settlement Agreement, as Master Preferred Hotels, L.P. did not transfer "any hotel" prior to the effective date of the Assignment Agreement.



EXHIBIT

B

SEP 2 4 2007

Mark Beaman
September 20, 2007
Page 2

Third, and similarly, paragraph 18 of the Settlement Agreement only relates to "any material change in ownership of any entity *owned or controlled* by Master Preferred Hotels, L.P." (emphasis added). Again, as the Assignment Agreement reflects, there had been no such change as of March 2004.

Accordingly, as stated in our August 9, 2007 letter, RFS, Inc. should direct all demands solely to the Trustee for the subordinated note holders of Master Preferred Hotels, L.P. Sterling reserves all legal rights and remedies against Promus Hotel Corporation, RFS, Inc. and DT Management, Inc. in the event any legal action against Sterling is initiated.

We trust this letter resolves this matter with regard to Sterling.

Sincerely,

GALLAGHER & KENNEDY, P.A.

By:

Glen Hallman

GH:kjh
Enclosures
1641188 / 11510-3

APR-28-2004 19:58 FROM:WESTIN HBR CASTLE                    TO:915613669145          P.12/35
04/28/04  14:27 FAX 12507302777          STERLING CENTRECORP                          @012
                                         SINKIN BARRETTO                               @003

## SETTLEMENT AGREEMENT, MUTUAL RELEASE
## AND INDEMNIFICATION AGREEMENT

THIS SETTLEMENT AGREEMENT, MUTUAL RELEASE AND
INDEMNIFICATION AGREEMENT ("Agreement") is entered into effective March 31, 2004,
by and between Steven A. Sinkin and Grant McPhail, in their capacity as trustees as set forth in
the pledge and security agreement dated July 1, 2001, (hereinafter sometimes collectively
referred to as the "Trustees"[D,]] for the individuals and entities more particularly identified on
Exhibit "A" annexed hereto and forming a part hereof (said individuals and entities being
hereinafter sometimes collectively referred to as the "Subordinated Noteholders") (the said
Subordinated Noteholders being hereinafter sometimes collectively referred to as the
"Releasors" Steven A. Sinkin is a Subordinated Noteholder and is signing as a Subordinated
Noteholder) and Senior Preferred Hotels, L.P., Senior Preferred Hotels, Inc., Preferred Equities,
Ltd., Preferred Equity US, Inc., Szmoth Equity Corporation, Sanoth Hotels, Inc., Sterling USA,
Inc., SCH Corp, and Sterling Centrecorp Inc. (hereinafter sometimes collectively referred to as
the "Releasees").

### RECITALS

A. The Trustees are the trustees for the Subordinated Noteholders pursuant to the Pledge
Agreement referred to below which confers upon the Trustees, among other things, and it is
believed in good faith by all parties to this agreement that the trustees have the power and
authority to enter into this Agreement for and on behalf of the Subordinated Noteholders and the
other members of the "Releasor Group" (as said term is hereinafter defined) and to bind said
obligate the Subordinated Noteholders and the other members of the Releasor Group in
accordance with the terms of this Agreement; The Trustees hereby confirm that they have
obtained the written authorization in the form attached hereto as exhibit A from the subordinated
noteholders who hold subordinated notes representing approximately $4,000,000.00 of the
aggregate total indebtedness evidenced by all outstanding subordinated notes;

B. In or about December, 2000, the owners (the "Former LP Unit Owners") of certain
limited partnership units (the "Preferred LP Interests") in Preferred Equity (U.S.) Limited
Partnership and Preferred Equity Limited Partnership entered into certain Settlement
Agreements and Releases (each, a "2000 Settlement Agreement", and collectively, the "2000
Settlement Agreements") with Sterling Centrecorp Inc. (formerly known as Sterling Financial
Corporation), Senior Preferred Hotels, L.P., Preferred Equity Limited Partnership and Preferred
Equity (U.S.) Limited Partnership;

C. Pursuant to the terms of the 2000 Settlement Agreements, among other things, (i) the
Former LP Unit Owners assigned their respective Preferred LP Interests to Preferred Equity
Limited Partnership or Preferred Equity (U.S.) Limited Partnership, (ii) Senior Preferred Hotels,
L.P. executed and delivered to such Former LP Unit Owners a subordinated promissory note
(each, a "Subordinate Note", and collectively, the "Subordinated Notes") and (iii) the Former LP
Unit Owners released Sterling Centrecorp Inc. and various other persons and entities from



APR-28-2004 19:58 FROM:WESTIN HBR CASTLE                    TO:915613669145           P.13/35
04/28/04  14:27 FAX 12107562777        SIMIEN BARRETTO

liability in respect of all claims, causes of action, liabilities and other matters, all as more particularly set forth in the 2000 Settlement Agreement;

D. The Subordinated Noteholders are the current owners and holders of the Subordinated Notes which evidence indebtedness of Senior Preferred Hotels, L.P. to the Subordinated Noteholders in the aggregate principal amount of $5,400,000.00;

E. The Subordinated Notes are secured by a certain Pledge and Security Agreement dated July 1, 2001 (the "Pledge Agreement") pursuant to the terms of which Senior Preferred Hotels, L.P. pledged to the Trustees (and to Eugene Kaulius), as trustees for the Subordinated Noteholders, certain limited partnership interests that are owned by Senior Preferred Hotels, L.P. (Eugene Kaulius has since resigned as a trustee for the Subordinated Noteholders.); the pledge and security agreement has been independently read and evaluated by each party.

F. Master Preferred Hotels, L.P. is the owner of the limited partnership interests (collectively, the "Hotel LP Interests") in the following limited partnerships (collectively, the "Hotel Limited Partnerships"), to wit:

    i.    Preferred Riverwalk, L.P., the owner of the Four Points Riverwalk hotel in San Antonio, Texas;

    ii.    Preferred Main Gate West, L.P., the owner of a Holiday Inn Main Gate West hotel in Orlando, Florida;

    iii.    Preferred Resort Main Gate, L.P., the owner of a Ramada Inn hotel in Orlando, Florida;

    iv.    Preferred International Drive, L.P., the owner of a Holiday Inn Express International Drive hotel in Orlando, Florida; and

    v.    Preferred Hawaiian, L.P., the owner of an Econolodge hotel in Orlando, Florida;

[The hotels referred to in (i) through (v) above are hereinafter sometimes collectively referred to as the "Hotels", and each, individually, as a "Hotel".]

G. Sansoh Hotels Inc. is the owner of all of the issued and outstanding shares of the stock (collectively, the "OP Shares") of the following corporations, to wit:

    i.    Master Preferred Hotels, Inc., the general partner in Master Preferred Hotels, L.P.;

    ii.    Preferred Riverwalk, Inc., the general partner in Preferred Riverwalk, L.P.;

    iii.    Preferred Main Gate West, Inc., the general partner in Preferred Main Gate West, L.P.;

    iv.    Preferred Resort Main Gate, Inc., the general partner in Preferred Resort Main Gate, L.P.;

    v.    Preferred International Drive, Inc., the general partner in Preferred International Drive, L.P.; and

    vi.    Preferred Hawaiian, Inc. the general partner in Preferred Hawaiian, L.P.;

[The corporations referred to in (i) through (vi) above are hereinafter sometimes collectively referred to as the "GP Corporations", and each, individually, as a "GP Corporation".]

H. Sterling USA, Inc. is the owner of all of the issued and outstanding shares of the stock (collectively, the "Hospitality Shares") of Sterling Hospitality, Inc.;

I. The Hotels are encumbered by certain mortgages, deeds of trust and other security documents (the "Mortgages") that evidence and secure certain indebtedness of the Hotel Limited Partnerships to LaSalle National Bank, as Trustee for the registered holders of the DLJ Mortgage Acceptance Corp., Commercial Mortgage Pass-Through Certificates, Series 1997 -CF2 (the "Mortgagee");

J. The Mortgages are currently in default, the Mortgagee has accelerated the indebtedness evidenced and secured thereby and has filed suit to enforce its rights under the Mortgages and under the notes which evidence such indebtedness, including but not limited to foreclosure of the Mortgages;

K. The Releasees have advised the Trustees that the Releasees do not believe that there is any significant likelihood of preventing the enforcement by the Mortgagee of its aforesaid rights or the ultimate acquisition of the Hotels by the Mortgagee, whether by foreclosure of the Mortgages, involuntary bankruptcy proceedings, deed in lieu of foreclosure or otherwise;

L. The Trustees have advised the Releasees that the Trustees believe that there is, or may be, a possibility to achieve a workout or other resolution or settlement with the Mortgagee which might enable the Subordinated Noteholders to realize value from one or more of the Hotels, which could, in turn, be applied on account of the indebtedness evidenced by the Subordinated Notes;

M. The Trustees have declared Senior Preferred Hotels, L.P. in default under the Subordinated Notes and have notified Senior Preferred Hotels, L.P. that the Releasees intend to exercise the rights granted to them under the Pledge Agreement;

N. The Trustees have further asserted that the Subordinated Noteholders have, or may have, and that the Trustees, in their capacity as Trustees only, have or may have claims and/or

APR-29-2004 19:59 FROM:WESTIN HER CASTLE                         TO:915613669145        P.15/35
          04/28/04  14:28 FAX 12105362777    STERLING CENTRECORP
                                             MIXXIN BARRETTO                              @008

causes of action and/or other rights and/or remedies against the Releasees and/or other members
of the "Releasee Group" (as said term is hereinafter defined) arising from, inter alia, (i) the
Subordinated Notes, and/or (ii) the pledge of the Master Preferred LP Interests to the Releasors,
and/or (iii) the management of the Hotels by Sterling Hospitality, Inc., that could be asserted and
arising out of the ownership of the subordinated notes, arising out of the 2000 settlement
agreements, or arising out of the matters referred to in the matters referred to in the recitals
herein and/or (iv) other matters relating to and/or arising from and/or connected with the
ownership, operation and/or management of the hotels, and/or the ownership, operation and/or
management of Master Preferred Hotels, L.P., and/or the ownership and handling of the Master
Preferred LP Interests, and/or the ownership, operation and/or management of the Hotel Limited
Partnerships, and/or the ownership, operation and/or management of Senior Preferred Hotels,
L.P., that could be asserted and arising out of the ownership of the subordinated notes, arising out
of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein
and/or (v) other matters as to which information and details have not been furnished by the
Trustees to the Releasees that could be asserted and arising out of the ownership of the
subordinated note, arising out of the 2000 settlement agreements, or arising out of the matters
referred to in the recitals herein;

        O. In recognition of the foregoing, and in consideration of the mutual covenants and
agreements of the parties herein contained, and in full satisfaction of the indebtedness, evidenced
by the Subordinated Notes, including any and all accrued but unpaid interest thereon, and in full
satisfaction of any and all other "Claims" arising out of the ownership of the subordinated notes,
arising out of the 2000 settlement agreements, or arising out of the matters referred to in the
recitals herein (as said term is hereinafter defined) which the Trustees, [[i]]n their capacity as
trustees or the Releasors, or any of them, or the other members of the Releasor Group might
have or might be able to assert against the Releasees, or any of them, including, without limiting
the generality of the foregoing, the matters referred to in Recital N above, and in consideration
of the release, covenant not to sue and indemnification contained in this Agreement, the
Releasees have agreed:

        (i) to cause Senior Preferred Hotels, L.P. to transfer and assign to the Releasors,
as trustees for the Subordinated Noteholders, the Master Preferred LP Interests; and

        (ii) to cause Sarnath Hotels, Inc. to transfer and assign to the Releasors, as
trustees for the Subordinated Noteholders, the GP Shares; and

        (iii) to cause Sterling USA, Inc. to transfer and assign to the Releasors, as trustees
for the Subordinated Noteholders, the Hospitality Shares.


        NOW, THEREFORE, following independent investigation by all parties, and in
consideration of the mutual promises, terms, conditions, provisions and covenants described
below, which consideration is hereby acknowledged by all parties, the parties hereby agree to
settle their claims as follows:



APR-28-2004 19:59 FROM:WESTIN HBR CASTLE          TO:915613669145          P.16/35
'04/28/04  WED 19:15 FAX 13013009145      STERLING CENTRECORP                    @007
          03/28/04  16:28 FAX 12107382777   SIMEIN BARRETTO

1. **Recitals True and Correct.** The foregoing Recitals are true and correct in all respects and are incorporated in this Agreement as if again set out herein at length.

2. **Transfer; Resignation of Officers and Directors; and Further Assurance.**

    A. Simultaneously with the execution of this Agreement, the Releasees shall transfer and assign the Master Preferred LP Interests, the GP Shares and the Hospitality Shares unto the Trustees, as trustees for the Subordinated Noteholders, said transfer to be made without recourse, representation or warranty, other than (i) that Senior Preferred Hotels, L.P. is the owner of the Master Preferred LP Interests, (ii) that Sanath Hotels, Inc. is the owner of the GP Shares, (iii) that Sterling USA, Inc. is the owner of the Hospitality Shares, and (iv) that the Master Preferred LP Interests, the GP Shares and the Hospitality Shares have not been transferred, pledged or hypothecated to any other party except, in the case of the Master Preferred LP Interests, pursuant to the pledge of said Master Preferred LP Interests executed in favor of the Releasors, as trustees for the Subordinated Noteholders.

    At the option of the Trustees, the Master Preferred LP Interests, the GP Shares and/or the Hospitality Shares shall be transferred and assigned to another entity or entities designated by the Trustees, the Trustees hereby representing and warranting to the Releasees that such designated entity or entities will acquire such interests and shares as agent, nominee and trustee for the benefit and account of the Subordinated Noteholders. The aforementioned designated entity or entities shall join in and execute this agreement as a Releasor or as Releasors.

    Sterling USA, Inc. agrees that on the effective date of the transfers referred to above, (i) all current trade payable will have been paid by Sterling Hospitality, Inc. on an accrual basis or if not so paid then funds sufficient to pay such current trade payables will remain on hand in the bank account of Sterling Hospitality, Inc., (ii) that in addition to the sums referred to in clause (i) immediately preceding, the further sum of $10,000 shall remain on hand in the bank account of Sterling Hospitality, Inc., it being expressly understood and agreed that any other cash in the accounts of Sterling Hospitality, Inc. (ia., in addition to the sums referred to in clauses [i] and [ii] above) on or prior to such effective date (including but not limited to management fees payable through such effective date) shall be distributed to (or as directed by) Sterling USA, Inc. at or prior to such effective date, (iii) no furniture, fixtures or equipment owned by Sterling Hospitality, Inc. and which was located in any of the Hotels or any other location as of April 1, 2004 will have been removed by Sterling USA, Inc. or any of its employees, officers or directors, and (iv) that all employee payroll taxes payable by Sterling Hospitality, Inc. or payable by any limited partnership and/or hotel identified in recitals paragraph F (or its payroll company) in respect of salaries payable to the employees of Sterling Hospitality, Inc. or the employees of any limited partnership an/or hotel identified in recitals paragraph F as of the last pay period ending prior to the effective date of the transfers referred to above will have been duly paid and/or withheld by or at the direction of Sterling Hospitality, Inc. prior to that date.



APR-28-2004 20:00 FROM:WESTIN HBR CASTLE                    TO:915613669145          P.17/35

Releasers represent and warrant that all payroll taxes, including 941 taxes are current and paid. Releasers individually and collectively will indemnify and hold the subordinated noteholder, Trustees and the officers, directors and shareholders of the successor entities harmless from any federal taxes, state taxes, payroll taxes, including 941 taxes, sales taxes, franchise taxes and/or transaction privilege taxes that have or may have accrued and/or are due and owing as the date of execution of this agreement in connection with the operation of the "Hotels" by the Releasers, but only to the extent that said taxes are payable individually by said subordinated noteholders, Trustees, officers, directors, and/or shareholders of the successor entities. This indemnity as to payroll taxes including 941 taxes shall not apply for the current pay period to the extent of any funds improperly withdrawn by the Trustees or Releasers out of any payroll operating or other account that contained funds for the payment of 941 payroll taxes for the current pay period prior to the execution of this agreement and the withdrawal of said funds occurs after the date of execution of this agreement or to the extent that any such payroll, operating or other account that contains funds for the payment of 941 taxes for the current pay period is frozen by virtue of any bankruptcy proceeding filed as to the HOTELS, the HOTEL, Ltd. Partnerships, the GP Corporations or Sterling Hospitality, Inc.

B.   Simultaneously with the transfers referred to in Paragraph 2A above, the Releasers shall cause all directors and officers of the GP Corporations and all directors and officers of Sterling Hospitality Inc. to resign effective as of the date of such transfers.

C.   Each Releasor hereby agrees and/or shall be deemed to have agreed that such Releasor will abide by this Agreement, which terms are meant to be contractual, and further agrees that such Releasor will do such acts and prepare, execute and deliver such documents as may reasonably be required in order to carry out the purposes and intents of this Agreement. Each Releasee hereby agrees and/or shall be deemed to have agreed that such Releasee will abide by this Agreement, which terms are meant to be contractual, and further agrees that such Releasee will do such acts and prepare, execute and deliver such documents as may reasonably be required in order to carry out the purposes and intents of this Agreement.

3.   Mutual Discharges.

A.   Except for the obligations of the Releasees and the other members of the "Releasee Group" under this Agreement and/or under any documentation executed contemporaneously herewith or documentation generated in performance of this agreement to give effect to the terms hereof, each Releasor, for itself, and for and on behalf of its respective successors, heirs, executors, administrators, representatives, [[,]] agents and assigns (the Releasors and their respective successors, heirs, executors, administrators, representatives[[]]agents and assigns being hereinafter sometimes referred to, collectively, as the "Releasor Group") hereby releases and forever discharges and/or shall be deemed to have forever released and discharged the Releasees, their predecessors, successors, parents, subsidiaries, and affiliates and all present and former officers, directors, partners, principals, managers, members, shareholders, employees, attorneys, [[,]] agents and their respective administrators, representatives, spouses, heirs, agents and assigns (collectively, the "Releasee Group") from any and all "Claims" which were or could have been asserted or alleged in any



APR-28-2004 20:00 FROM:WESTIN HBR CASTLE                    TO:915613669145             P.18/35

action that the Releasors, or any of them, or any other member of the Releasor Group, might have been able to file or initiate against the Releasees, or any of them, or against any other member of the Releasee Group arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein. Grant McPhail in his capacity as Trustee and as a previous subordinated noteholder joins in this mutual discharge.

B. Except for the obligations of the Releasees and the other members of the "Releasee Group" under this Agreement and/or under any documentation executed contemporaneously herewith to give to the terms hereof, each Releasee, for itself, and for and on behalf of its respective successors, representatives, [[]], agents and assigns hereby releases and forever discharges the Releasors and the other members of the Releasor Group from any and all "Claims" which were or could have been asserted or alleged in any action that the Releasees, or any of them, or any other member of the Releasee Group, might have been able to file or initiate against the Releasors, or any of them, or against any other member of the Releasor Group arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein.

C. As used herein, the term "Claims" shall be deemed to mean and refer to any and all claims arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein, causes of action, damages, losses, liabilities, expenses, debts, dues, sums of money, accounts, reckonings, contracts, controversies, agreements, promises and demands of any and every character, kind and nature whatsoever, now existing or which may hereafter arise from any facts, acts, omissions, occurrences, events or circumstances now existing or to arise in the future arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein, whether known or unknown, fixed or contingent, direct or indirect, accrued or not accrued, liquidated or unliquidated, suspected or unsuspected, or claimed or concealed, in contract or in tort or otherwise, regardless of the legal, contractual or equitable basis thereof and whether for compensatory, punitive damages or otherwise, including but not limited to any such claims, causes of action, damages, losses, liabilities, expenses, debts, dues, sums of money, accounts, reckonings contracts, controversies, agreements, promises and demands, past, present or future, based upon any facts, acts, omissions, occurrences, events or circumstances now existing or to arise in the future, and/or based upon any of the matters referred to in the recitals section above, and/or in connection with, or based upon, the 2000 Settlement Agreements and/or the transactions contemplated therein, and/or in connection with, or based upon, any of the documents executed in conjunction therewith and/or contemporaneously therewith, including [[]]the Subordinated Notes and the Pledge Agreement, and/or any claims arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein based upon negligence, usury, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual or business relationship, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies, racketeering activities, securities or antitrust laws violations,

APR-28-2004 20:01 FROM:WESTIN HER CASTLE                    TO:915613669145          P.19/35
            04/28/04 14:55 FAX 12107382777            SINKIN BARRETTO                      @010

tying arrangements, deceptive trade practices, breach or abuse of any alleged fiduciary duty, breach or abuse of any alleged duty of care or loyalty, breach of any alleged special relationship, course of conduct or dealing, alleged obligation of fair dealing, alleged obligation of good faith, alleged obligation of good faith and fair dealing, failure to provide notice of, or request consent to, any matter or action whether or not in connection with or related to an agreement, or any doctrine of piercing the corporate veil, alter ego, mere instrumentality or agency, any and all of the above arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein.

3.1 AS USED HEREIN, THE TERM "CLAIMS" SHALL NOT BE DEEMED TO MEAN NOR REFER TO ANY CLAIMS ARISING OUT OF THE MATTERS REFERRED TO IN PARAGRAPH 4.1 HEREOF AND IT IS UNDERSTOOD BY ALL OF THE PARTIES HERETO THAT SAID MATTERS ARE EXPRESSLY EXCLUDED.

4.  General Release. Except for the obligations of the parties under this Agreement and/or under any documentation executed contemporaneously herewith or documentation executed in performance of this agreement to give to the terms hereof, it is understood and agreed that this Settlement Agreement, Mutual Release and Indemnification Agreement shall constitute a general release by the Releasors and the Releasor Group in favor of the Releasees and the Releasee Group and by the Releasees and the Releasee Group in favor of the Releasors and the Releasor Group and shall be effective as a full and final accord and satisfaction, and as a bar to all Claims, and to all other actions, causes of action, costs, expenses, attorneys' fees, damages, claims and liabilities whatsoever, whether or not now known, suspected, claimed or concealed arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein. Grant McPhail in his capacity as Trustee and as a previous subordinated noteholder joins in the general release.

4.1 Notwithstanding any language to the contrary contained anywhere herein; it is expressly understood by the Releasees and the Releasee Group that Steven A Sinkin and Sinkin & Barretto, PLLC retains its right to sue the Releasees and the Releasee Group and/or their successors or predecessors as the case may be for a claimed breach of the attorney fee contract by and between said parties relating to their representation for property damage and/or insurance claims at the Sheraton Four Points hotel in San Antonio, Texas. The Hotel is more fully described in recital F.(f). It is further understood that any loss, claim, damages, cost, attorney fees, suit nor any other loss of any nature whatsoever incurred or to be incurred by the Releasees and the Releasee Group and/or their successors or predecessors as the case may be, resulting from the breach of contract lawsuit described in section 4.1 is not, will not and is never contemplated by any of the parties hereto to be a part of the SETTLEMENT AGREEMENT, MUTUAL RELEASE AND INDEMNIFICATION AGREEMENT, including but not limited to any indemnity agreement and/or covenant not sue contained therein on the part of Steven A. Sinkin, in any capacity whatsoever, including but not limited to, Steven A. Sinkin, individually, as Trustee, and/or Releasor herein. It is further understood by the parties hereto, that the Releasees and the Releasee Group and/or their successors or predecessors as the case may be are



APR-28-2004 20:01 FROM:WESTIN HBR CASTLE          TO:915613669145          P.20/35
        04/28/04  NED 18:18 FAX 15613669145      STERLING CENTERCORP          @020
        04/28/04  14:30 FAX 1210735277Y          SINKIN BARRETTO              @011

not admitting any liability and that they expressly deny any liability arising from the attorney fee contract referenced hereinabove by the execution of this agreement.

4.2. Releasees represent and warrant that to the best of their knowledge there are no actual or potential claims by the Releasees or their related entities that currently exist against the Releasees that are unrelated to the the ownership of the subordinated notes, the 2000 settlement agreements or any of the matters referred to in the Recitals herein. Anything in this Agreement to the contrary notwithstanding, it is understood and agreed that the term "Claims" shall not be deemed to include claims, causes of action or the like arising from matters that do not arise out of the ownership of the subordinated notes, the 2000 settlement agreements or any of the matters referred to in the Recitals and that no party hereto and any releasor shall be deemed to have discharged, released, waived or agreed not to sue or indemnify any other party hereto with respect to any such claim, cause of action or the like arising in the past or in the future from matters that do not arise out of the ownership of the subordinated notes, the 2000 settlement agreements or any of the matter referred to in the recitals herein or claims, causes of action or the like to which the warranty and representation in this paragraph is not accurate.

5. Waiver of Unknown Claims.

A. In connection with the waiver and relinquishment set forth in Paragraphs 3 and 4 above, each Releasor acknowledges and/or shall be deemed to have acknowledged that such Releasor is aware that such Releasor may hereafter discover claims or facts in addition to or different from those which such Releasor now knows or believes to exist with respect to the subject matter of this Agreement, but it is such Releasor's intention to fully, finally and forever settle and release all of the disputes and differences known or unknown, suspected or unsuspected which do now exist, may exist in the future or have ever existed with one another, arising or in connection with subject matter of this Agreement arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the recitals herein. In furtherance of such intention, each Releasor agrees and/or shall be deemed to have agreed that this Agreement shall remain in effect as a full and complete settlement agreement and release of the claims included in this Agreement notwithstanding the discovery or existence of any said additional or different claims or facts the arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of any of the matters referred to in, recitals herein. Grant McPhail in his capacity as Trustee and as a previous subordinated noteholder joins in this waiver.

B. In connection with the waiver and relinquishment set forth in Paragraphs 3 and 4 above, each Releasee acknowledges that such Releasee is [I]Iaware that such Releasee may hereafter discover claims or facts in addition to or different from those which such Releasee now knows or believes to exist with respect to subject matter of this Agreement arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of any of the matters referred to in the recitals herein but it is such Releasee's intention to fully, finally and forever settle and release all of the disputes and differences known or unknown, suspected or unsuspected which do now exist, may exist in the future or have ever existed with one another, arising out of [or in connection with subject matter of this Agreement arising out of

Page 9 of 20

APR-28-2004 20:02 FROM:WESTIN HBR CASTLE          TO:915613669145          P.21/35
  04/28/04  WED 19:19 FAX 15613669145        STERLING CENTRECORP                 
  04/28/04  14:56 FAX 12107382777            STRKIN BARRETTO

the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of any of the matters referred to in the recitals herein. In furtherance of such intention, each Releasee agrees that this Agreement shall remain in effect as a full and complete settlement agreement and release of the claims included in this Agreement notwithstanding the discovery or existence of any said additional or different claims or facts or relating its subject matter of this Agreement arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of any of the matters referred to in the recitals herein.

6.    Waiver Bargained For.  Each Releasor acknowledges and/or shall be deemed to have acknowledged, and each Releasee acknowledges, that the foregoing waiver was separately bargained for and is a key element of this Agreement of which their release is a part.

7. Indemnification. Each Releasor hereby undertakes and agrees and/or shall be deemed to have undertaken and agreed, at the sole cost and expense of such Releasor, to indemnify, defend (with counsel selected by the Releasees), and save and hold harmless the Releasees and the other members of the Release Group, from and against any and all losses, costs, expenses (including reasonable attorneys fees and court costs at all levels of proceedings) and liabilities of any and every kind, nature and description whatsoever which may be sustained or incurred by the Releasees, or any of them, or by any other member of the Release Group, in connection with, or arising out of, any acts or omissions of such Releasor taking place, from or after the date of this Agreement in respect of the matters referred to in the Recitals section above[1].

       [1]It is expressly understood and agreed that no Releasor shall be obligated to indemnify the Releasees (or any of them), or any other member of the Releasee Group, in respect of any such act or omission of any third party (including any other member of the Releasor Group)[.] However, the only exception as to each releasor is a third party making a claim arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of any of the matter referred to in the recitals herein and acting at the insistence or request of or in concert with such Releasor. Notwithstanding any language to the contrary, however, there shall be no indemnity for claims or omass action set forth in paragraphs 4.1 and 4.2.

8.Ownership.

A. Each Releasor represents and warrants and/or shall be deemed to have represented and warranted to the Releasees and the other members of the Release Group that such Releasor has not encumbered, assigned or transferred or purported to encumber, assign or transfer, in whole or in part, to any person, firm or corporation whatsoever, the Claims herein released; and each Releasor agrees and/or shall be deemed to have agreed to hold harmless the Releasees and all other members of the Release Group against any losses, costs, expenses (including reasonable attorneys fees and court costs at all levels of proceedings) and/or liabilities which the Releasees or any other member of the Release Group may sustain or incur as a result of the inaccuracy of the foregoing representation and warranty.

Page 10 of 20



B. Each Releasee represents and warrants to the Releasors and the other members of the Releasor Group that such Releasee has not encumbered, assigned or transferred or purported to encumber, assign or transfer, in whole or in part, to any person, firm or corporation whatsoever, the Claims herein released; and each Releasee agrees to hold harmless the Releasors and all other members of the Releasor Group against any losses, costs, expenses (including reasonable attorneys fees and court costs at all levels of proceedings) and/or liabilities which the Releasors or any other member of the Releasor Group may sustain or incur as a result of the inaccuracy of the foregoing representation and warranty.

9.    **No Admission.**    The purpose of this Agreement is to accomplish the compromise and settlement of disputed and contested claims, and nothing in this Agreement shall be construed as an admission by any party to this Agreement of any liability of any kind to any other party to this Agreement.

10.    Covenant Not To Sue.

A. Except for the obligations of the parties under this Agreement and/or under any documentation executed contemporaneously herewith to give effect to the terms hereof, each Releasor covenants and agrees and/or shall be deemed to have covenanted and agreed that such Releasor will forever refrain and forebear (and will make best efforts to prevent any other Releasor and/or any other member of the Releasor Group) from commencing, instituting, or prosecuting any lawsuit, proceeding or action arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein, or in any manner voluntarily aid the commencement, institution or prosecution of any claim, demand, suit, proceeding or action or cause of action, state or federal, against the Releasees, or any of them, or any other member of the Releasee Group, with respect to any Claim arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein, or with respect to any[l1] cause or thing whatsoever arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein, Including, without limiting the generality of the foregoing, any Claim or other matter, cause or thing whatsoever arising out of, based in whole or in part upon, or relating to, or existing, by reason of, the transactions, events, occurrences, acts, omissions, or failure to act, of whatever kind or character whatsoever set forth in the matters referred to in the recitals section above arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein, or which could have been asserted or alleged in any action that the Releasors, or any of them, or any other member of the Releasor Group, might have been able to file or initiate against the Releasees, or any of them, or against any other member of the Releasee Group arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein, whether said action be based upon a tort, contract or any other theory of recovery arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein and whether for compensatory, punitive damages or otherwise[arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals or under any documentation executed contemporaneously herewith to



APR-29-2004 20:02 FROM:WESTIN HER CASTLE                    TO:915613669145          P.23/35
         04/28/04  WED 19:19 FAX 15613669145      STERLING CENTRECORP                      囵014
         04/28/04  14:31 FAX 12107398777          SIMKIN BARRETTO

give effect to the terms hereof, each Releasee covenants and agrees that such Releasee will forever refrain and forebear (and will make best efforts to prevent any other Releasee and/or any other member of the Releasee Group) from commencing, instituting, or prosecuting any lawsuit, proceeding or action, or in any manner voluntarily aid the commencement, institution or prosecution of any claim, demand, suit, proceeding or action or cause of action, state or federal, against the Releasors, or any of them, or any other member of the Releasor Group, with respect to any Claim arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of any of the matters referred to in the recitals herein, or with respect to any other matter arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein, cause or thing whatsoever, including, without limiting the generality of the foregoing, any Claim [I] arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein, cause or thing whatsoever arising out of, based in whole or in part upon, or relating to, or existing, by reason of, the transactions, events, occurrences, acts, omissions, or failure to act, of whatsoever kind or character whatsoever set forth in the matters referred to in the recitals section above arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements, or arising out of the matters referred to in the recitals herein, or which could have been asserted or alleged in any action arising out of the ownership of the subordinated notes, arising out of the 2000 settlement agreements or arising out of the matters referred to in the recitals herein that the Releasees, or any of them, or any other member of the Releasee Group, might have been able to file or initiate against the Releasors, or any of them, or against any other member of the Releasor Group, whether based upon a tort, contract or any other theory of recovery and whether for compensatory, punitive damages or otherwise.

   C.   (i)      If the Releasors, or any of them, or any other member of the Releasor Group, shall breach this covenant not to sue, then the person or entity sued shall be entitled to recover from the person or entity breaching this covenant all reasonable attorneys' fees and costs incurred by the person or entity so sued. Notwithstanding any language to the contrary, however, the covenant not to sue shall not apply to the claims or causes of action set forth in paragraphs 4.1 and 4.2.

         (ii) If the Releasees, or any of them, or any other member of the Releasee Group, shall breach this covenant not to sue then the person or entity sued shall be entitled to recover from the person or entity breaching this covenant all reasonable attorneys' fees and costs incurred by the person or entity so sued.

   D.   Grant McPhail in his capacity as Trustee and as a previous subordinated noteholder joins in this covenant not to sue.

   11. Insurance. [II] Effective as of the date of the transfers referred to in this Agreement, the Releasees have arranged and Releasors shall contract for and thereafter maintain in full force and effect, liability, casualty and other insurance relating to the Hotels which shall (a) provide equal or greater coverages than the coverages theretofore provided under the

APR-28-2004 20:03 FROM:WESTIN HER CASTLE          TO:915613669145          P.24/35
04/28/04  13:52 FAX 12107302777      SIMIN BARRSITO                        @018

insurance policies in effect immediately prior to such transfers, (b) be issued by qualified insurers licensed in the states in which the Hotels are located and having A.M. Best ratings equal to or better than the insurers who provided such prior coverages.

12. Entire Agreement. This Agreement constitutes the complete and entire written Agreement of compromise, settlement and release by the Releasors, for themselves and for and on behalf of the other members of the Releasor Group, in favor of the Releasees and the other members of the Release Group and by the Releasees, for themselves and for and on behalf of the other members of the Release Group, in favor of the Releasors and the other members of the Releasor Group, and constitutes the complete expression of the terms of the settlement. All prior and contemporaneous agreements, representations, and negotiations regarding the matters resolved herein are superseded.

13. No Modification. The terms of this Agreement can only be amended or modified by a writing, signed by duly authorized representatives of all parties hereto, expressly stating that such modification or amendment is intended.

14. Attorney Fees. If there is any dispute regarding this Agreement or the representations or warranties contained herein, the prevailing party in such dispute shall be entitled to recover all losses, costs and expenses including reasonable attorneys' fees, whether or not suit is filed. Trustees are not liable personally for losses costs and expenses including reasonable attorneys' fees, whether or not suit is filed.

15. Severability. If any provision of this Agreement is found to be illegal or unenforceable, then any such provision shall be deemed stricken and the remaining provisions hereof shall, nevertheless, remain in full force and effect. In the event of a breach, this Agreement may be specifically enforced.

16. Jurisdiction. The parties consent to the jurisdiction of the courts of the State of Texas to resolve any dispute regarding this Agreement. In mutual recognition of the fact that this Agreement is to be performed in Bexar County, Texas, the parties agree that in the event any civil action is commenced regarding this Agreement, Bexar County, Texas, is the proper county for the commencement and trial of such action.

17. No Waiver. Waiver of anyone breach of the provisions of this Agreement shall not be deemed a waiver of any other breach of any provision of this Agreement.

18. Interpretation. All parties to this Agreement and their counsel have reviewed and revised this Agreement, and the normal rule of construction to the effect that any ambiguities in an agreement are to be resolved against the drafting parties shall not be employed in the interpretation of this Agreement. It is the intent of the parties that the Discharge, General Release, Waiver of Unknown Claims, and Covenant Not To Sue set forth above are to be all-inclusive, without exception and construed to be all-encompassing as to claims arising out of the



APR-29-2004 20:03 FROM:WESTIN HBR CASTLE          TO:915613669145          P.25/35
04/28/04  WED 19:20 FAX 15613669145
04/28/04  14:32 FAX 12167362777          SIMKIN BARRSITO

ownership of the subordinated notes, arising out of the 2000 settlement agreements or arising out of the matters referred to in the recitals herein.

19. **Attorneys.** The parties hereto represent and warrant that the attorneys approving this Agreement as to form on their behalf are the attorneys employed by such party to represent such party with respect to this Agreement and all matters covered by and related to it and that the parties hereto have been fully advised by said attorneys with respect to their rights and obligations as to the execution of this Agreement. The parties hereto declare that they know and understand the contents of this Agreement and that they have executed the same voluntarily.

20. **No Representation.** Each of the parties hereto acknowledges that no other party, nor any agent nor any attorney of any other party has made any promise, representation or warranty whatsoever, express or implied, not contained herein concerning the subject matter hereof to induce said party to execute or authorize the execution of this Agreement and acknowledges that said party has not executed or authorized the execution of this Agreement in reliance upon any such promise, representation or warranty not contained herein.

21. **Authority.** Each individual signing this Agreement on behalf of Releasees directly and expressly warrants that he or she has been given and has received and accepted authority to so sign and execute the documents on behalf of the party for whom it is indicated they have signed, and further has been expressly given and received and accepted authority to enter into a binding agreement on behalf of such party with respect to the matters contained herein and as stated herein. The Trustees acknowledge that they retain such authority as set in the pledge and security agreement of July 1, 2001 and that no act or omission has occurred to limit the authority set forth in the pledge and security agreement.

22. **Attorneys' Fees And Costs In Connection with Negotiation of Agreement.** Each party hereto shall be responsible for payment of his, her, or its own attorneys' fees, costs and other legal expenses incurred in connection with the negotiation of this Agreement.

23. **Counterparts.** It is understood and agreed by and between the parties hereto that this Agreement may be executed in counterpart, and a signed copy shall have the full force and effect of a signature on any original and shall be considered an original as to the party signing any such copy.

24. **Survival.** All representations and warranties expressly set forth in this Agreement shall survive the execution of this Agreement and the transactions contemplated hereunder, and are material and have been or will be relied upon by the parties hereto notwithstanding any investigation made by or on behalf of any party.

25. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of all parties hereto and their respective heirs, representatives, successors and assigns.

26. **Texas Law.** This Agreement shall be governed by and construed under and in accordance with the laws of the State of Texas.

Page 14 of 20



APR-28-2004 20:03 FROM:WESTIN HBR CASTLE          TO:915613669145       P.26/35
04/28/04  14:55 FAX 1E197362777        SIMSIN BARRETTO           @017

27. **Karim Note.** The Releasees hereby represent that the Karim Note is not secured by or the obligation of the Master Preferred LP Interests, the GP Shares, the Hospitality Shares, the Hotels or any of the assets of the Hotels or any of the entities conveyed herein.

IN WITNESS WHEREOF, the parties hereto have entered into this Agreement made and effective as of the date first hereinabove written.

Signed, sealed and delivered

Page 15 of 20

APR-28-2004 20:04 FROM:WESTIN HBR CASTLE          TO:915613669145          P.27/35
04/28/04 WED 19:21 FAX 15613669146          STERLING CENTRECORP          @021
04/28/04 14:55 FAX 12107362777          SINGIN BARRETTO          @018

Trustees:

In the presence of:

Steven A. Sinkin,
as Trustee and for the
Subordinated Noteholders and
Releasor solely pursuant to his
ownership of a Subordinated
Noteholder

Grant McPhail,
as Trustee for the Subordinated
Noteholders and as a
previous Subordinated
Noteholder

[Signatures of the Releasees appear on the next page]

APR-28-2004 20:24 FROM:WESTIN HBR CASTLE                    TO:915613669145           P.28/35
04/28/04  WED 19:21 FAX 15613669145        STERLING CENTERCORP              Ø018
04/28/04  14:33 FAX 3310736277           SIMMIN BARRETTO                    Ø016

       Apr 28 2004 9:58AM    Wellington                    949-259-0628         p.8

In the presence of:                              Trustees:

                                                 Steven A. Birkin,
                                                 as Trustee and for the
                                                 Subordinated Noteholders and
                                                 Releasor solely pursuant to his
                                                 ownership of a Subordinated
                                                 Noteholder

                                                 _____
                                                 Albert S. McPhail,
                                                 as Trustee for the Subordinated
                                                 Noteholders and as a
                                                 previous Subordinated
                                                 Noteholder

          [Signatures of the Releasees appear on the next page]

APR-28-2004 20:04 FROM:WESTIN HBR CASTLE                    TO:915613669145           P.29/35
       04/28/04   WED 19:21 FAX 15613669145        STERLING CENTRECORP              WIPER
          04/28/04   14:33 FAX 12207362777         SIMKIN BARRETO                   @020

Signed, sealed and delivered
L.P.,
In the presence of:

By:

Releasees:

Senior Preferred Hotels,

By: Senior Preferred Hotels, Inc.,
General Partner

David Shreeve,
Vice President

Senior Preferred Hotels, Inc.

By: David Shreeve,
Vice President

Preferred Equities, Ltd.

By: David Shreeve,
Vice President

Preferred Equity US, Inc.

By: David Shreeve,
Vice President

Page 17 of 20

APR-28-2004 20:04 FROM:WESTIN HBR CASTLE                    TO:915613669145        P.30/35
04/28/04  14:15  FAX 12107362777              SIMKIN BARNETTO                  @021

[Signatures continued on the next page]

APR-28-2004 20:04 FROM:WESTIN HER CASTLE                    TO:915613669145          P.31/35
      04/26/04  WED 10:21 FAX 15613669145      STERLING CENTRECORP              @031
      04/26/04  11:14 FAX 12107362777      SIMKIN BARRETTO                      @022

Signed, sealed and delivered
in the presence of:

_____

_____

Samoth Equity Corporation

By: _____
    David Shreave,
    Vice President


_____

_____

Bamoth Hotels, Inc.

By: _____
    David Shreave,
    Vice President


_____

_____

Sterling USA, Inc.

By: _____
    David Shreave,
    Vice President


SCH Corp.

_____

_____

By: _____
    David Shreave,
    Vice President


Sterling Centrecorp Inc.

_____

_____

By: _____
    David Shreave,
    Vice President

Page 19 of 20

APR-28-2004 20:04 FROM:WESTIN HBR CASTLE          TO:915613669145          P.32/35

**JOINDER**

The undersigned, being the "designated entity" referred to in the second sentence of Paragraph 2A of the foregoing Agreement, does hereby join in the foregoing Agreement as a Releasor and does hereby consent and agree to the terms and provisions of said Agreement.

Gavinclad, Inc.

A Texas Corporation

By: _____
    Grant McPhail, President

Date: April 28, 2004

HT MFG, Inc.

A Texas Corporation

By: _____
    Grant McPhail, President

Date: April 28, 2004

APR-28-2004 20:04 FROM:WESTIN HBR CASTLE                    TO:915613669145              P.33/35
     04/28/04  WED 14:22 FAX 2361366X145      STERLING CONTROLLER              @024
        04/28/04  14:34 FAX 12107382777          SIMKIN BARRETTO               @034
       03/15/04  THE 09:55 FAX 604 X386965         CJT ARCHITECTS             PAGE  04/07
          03/15/2004  18:48   2107341789

## Senior Preferred Hotels LP Noteholder

I hereby authorize the Trustees Grant B McPhail, Steven Simkin and Eugene Kaulius to accept the
proposal set forth in the letter dated March 9, 2004 from Senior Preferred Hotels Inc.to transfer
ownership of the hotels to the noteholders.   I also authorize the Trustees to take the steps that the
Trustees deem advisable to protect the investment and rights of the noteholders.

_____
(Name of Noteholder)

PLEASE FAX THE ATTACHED FORM AS SOON AS POSSIBLE TO 210-736-2777

EXHIBIT
A

PRIVATE PROCESS

"The State of Texas"                NO.   2007-CI-17232

PROMUS HOTEL CORPORATION ETAL
**Plaintiff**
vs.

STERLING USA INC ETAL
**Defendant**
( Note: Attached Document May Contain Additional Litigants. )        **NOTICE**

**Citation** Directed to:  SAMOTH USA INC
                BY SERVING THE TEXAS SECRETARY OF THE STATE

IN THE DISTRICT COURT

 37th JUDICIAL DISTRICT

BEXAR COUNTY, TEXAS

RECEIVED
NOV 27 07
ASSURED
Civil Process Agency

"You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you." Said petition was filed on the 15th day of November , 2007 .
ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 16th DAY OF November A.D., 2007 .

ORIGINAL
PRTITION

MARK T BEAMAN
**Attorney/**PLAINTIFF
**address** 301 CONGRESS AVE 1825
       AUSTIN, TX 78701-4041

MARGARET G. MONTEMAYOR
**District Clerk of Bexar County, Texas**
**Bexar County Courthouse**
San Antonio, Texas 78205

By_____Deputy
       BETTY BERMEA

---

## OFFICER'S RETURN

Came to hand _____ day of _____, A.D. _____, at _____ o'clock _____.M.
and executed (not executed) the _____ day of _____, A.D. _____, in _____
at _____ o'clock _____.M. by delivering to _____
in person a true copy of this citation together with the accompanying copy of plaintiff's petition.  Served at _____
Cause of failure to execute this citation _____
I traveled _____ miles in the execution of this citation. Fees: _____ Serving citation
$ _____ Mileage _____ Total $ _____
       Badge/PPS #_____   _____

_____ County, Texas
       By _____

The State of Texas

NON - PEACE OFFICER VERIFICATION
VERIFICATION OF RETURN (IF NOT SERVED BY PEACE OFFICER)
SWORN TO this _____ day of _____, _____

_____
NOTARY PUBLIC, STATE OF TEXAS

**RETURN TO COURT**
(DK002)

CAUSE NO.    <u>**2007-CI-17232**</u>

# RETURN

**Came to hand:**   <u>11/27/2007</u> , at   <u>12:00</u>   o'clock   <u>**P.M.**</u>

- **Citation**
- **Plaintiff's Original Petition**
- **Request for Disclosure**
- **Plaintiff's First Request for Production to all Defendants**
- **Jury Demand**
- †55.00

**Executed:**   <u>11/27/2007</u> , at   <u>04:04</u>   o'clock   <u>**P.M.**</u>

**Executed at 1019 Brazos Street, 2nd floor, Austin, Travis County, Texas, 78701, by delivering to  SAMOTH USA INC., by delivering to SECRETARY OF STATE OF TEXAS, by delivering to citations clerk having charge of Corporation Department/Statutory Documents Section of Secretary of State of Texas, YESSENIA VASQUEZ, in person, true copies in duplicate of the above specified civil process having first endorsed on such copies the date of delivery.**

**I am over the age of 18, not a party to nor interested in the outcome of the above numbered suit.**

<u>George T. Castillo</u>

**Authorized Person:** George Castillo SCH1440
**ASSURED CIVIL PROCESS AGENCY**
**600 Sabine St., # 100, Austin, TX 78701**

**STATE OF TEXAS     }**

## VERIFICATION

**Before me, a notary public, on this day personally appeared the above named Authorized person, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are true and correct.  Given under my hand and seal of office on this the 27th day of November, 2007.**



DANA L. MCMICHAEL
Notary Public, State of Texas
My Commission Expires
April 23, 2008

**Notary Public Signature**

PRIVATE PROCESS

"The State of Texas"                    NO.   2007-CI-17232

PROMUS HOTEL CORPORATION ETAL                    IN THE DISTRICT COURT
Plaintiff
vs.
                                                  37th JUDICIAL DISTRICT
STERLING USA INC ETAL
Defendant                                         BEXAR COUNTY, TEXAS
( Note: Attached Document May Contain Additional Litigants. )
                                         **NOTICE**
**Citation** Directed to:   STERLING CENTERCORP INC
                            BY SERVING THE TEXAS SECRETARY OF THE STATE

"You have been sued. You may employ an attorney. If you or your attorney do not
file a written answer with the clerk who issued this citation by 10:00 a.m. on the
Monday next following the expiration of twenty days after you were served this
citation and petition, a default judgment may be taken against you." Said petition
was filed on the 15th day of November , 2007 .
ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 16th DAY OF November
A.D., 2007 .
ORIGINAL
PETITION

                                              MARGARET G. MONTEMAYOR
                                              District Clerk of Bexar County, Texas
                                              Bexar County Courthouse
MARK T BEAMAN                                 San Antonio, Texas  78205
Attorney/PLAINTIFF
address  301 CONGRESS AVE 1825
         AUSTIN, TX 78701-4041                By                              Deputy
                                                 BETTY BERMEA

---

## OFFICER'S RETURN

Came to hand _____ day of _____, A.D. _____, at _____ o'clock _____.M.
and executed (not executed) the _____ day of _____, A.D. _____, in _____
at _____ o'clock _____.M. by delivering to _____
in person a true copy of this citation together with the accompanying copy of plaintiff's
petition. Served at _____
Cause of failure to execute this citation _____
I traveled _____ miles in the execution of this citation. Fees: _____ Serving citation
$ _____ Mileage _____ Total $ _____
         Badge/PPS #_____      _____

                              _____ County, Texas
                              By _____

The State of Texas
                              NON - PEACE OFFICER VERIFICATION
VERIFICATION OF RETURN (IF NOT SERVED BY PEACE OFFICER)
SWORN TO this _____ day of _____, _____

                              _____
                              NOTARY PUBLIC, STATE OF TEXAS

                                                  RETURN TO COURT
                                                  (DK662)

CAUSE NO.     <u>2007-CI-17232</u>

# RETURN

**Came to hand:**    <u>11/27/2007</u>  , at   <u>12:00</u>   o'clock   <u>P.M.</u>

- **Citation**
- **Plaintiff's Original Petition**
- **Request for Disclosure**
- **Plaintiff's First Request for Production to all Defendants**
- **Jury Demand**
- $65.00

**Executed:**     <u>11/27/2007</u>  , at   <u>04:04</u>   o'clock   **P.M.**

**Executed at 1019 Brazos Street, 2nd floor, Austin, Travis County, Texas, 78701, by delivering to** <u>STERLING USA INC.</u>**, by delivering to SECRETARY OF STATE OF TEXAS, by delivering to citations clerk having charge of Corporation Department/Statutory Documents Section of Secretary of State of Texas,** <u>YESSENIA VASQUEZ</u>**, in person, true copies in duplicate of the above specified civil process having first endorsed on such copies the date of delivery.**

**I am over the age of 18, not a party to nor interested in the outcome of the above numbered suit.**

_George J. Castillo_

**Authorized Person:** George Castillo SCH1440
**ASSURED CIVIL PROCESS AGENCY**
**600 Sabine St., # 100, Austin, TX 78701**

**STATE OF TEXAS     }**

## VERIFICATION

**Before me, a notary public, on this day personally appeared the above named Authorized person, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are true and correct.  Given under my hand and seal of office on this the 27th day of November, 2007.**



DANA L. MCMICHAEL
Notary Public, State of Texas
My Commission Expires
April 23, 2008

**Notary Public Signature**

PRIVATE PROCESS

"The State of Texas"          NO.  2007-CI-17232

PROMUS HOTEL CORPORATION ETAL
**Plaintiff**
vs.

STERLING USA INC ETAL
**Defendant**
( Note: Attached Document May Contain Additional Litigants. )          **NOTICE**

**Citation** Directed to:  STERLING USA INC
BY SERVING THE TEXAS SECRETARY OF THE STATE

IN THE DISTRICT COURT

37th JUDICIAL DISTRICT

BEXAR COUNTY, TEXAS

RECEIVED
NOV 27 07
ASSURED
Civil Process Agency

"You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you." Said petition was filed on the 15th day of November , 2007 .
ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 16th DAY OF November A.D., 2007 .
ORIGINAL
PETITION

MARGARET G. MONTEMAYOR
**District Clerk of Bexar County, Texas**
Bexar County Courthouse
San Antonio, Texas 78205

MARK T BEAMAN
Attorney/PLAINTIFF
address  301 CONGRESS AVE 1825
AUSTIN, TX 78701-4041

By: _____ Deputy
BETTY BERMEA

---

**OFFICER'S RETURN**

Came to hand _____ day of _____, A.D. _____, at _____ o'clock _____.M.
and executed (not executed) the _____ day of _____, A.D. _____, in _____
at _____ o'clock _____.M. by delivering to _____
in person a true copy of this citation together with the accompanying copy of plaintiff's
petition.  Served at _____
Cause of failure to execute this citation _____
I traveled _____ miles in the execution of this citation. Fees: _____ Serving citation
$ _____ Mileage _____ Total $ _____
        Badge/PPS # _____          _____
        _____ County, Texas
                                By _____
The State of Texas

                    NON - PEACE OFFICER VERIFICATION
VERIFICATION OF RETURN (IF NOT SERVED BY PEACE OFFICER)
SWORN TO this _____ day of _____, _____

                    NOTARY PUBLIC, STATE OF TEXAS

                                RETURN TO COURT
                                        (DK002)

CAUSE NO.    <u>2007-CI-17232</u>

# RETURN

**Came to hand:**    <u>11/27/2007</u>  , at    <u>12:00</u>   o'clock   <u>P.M.</u>

- **Citation**
- **Plaintiff's Original Petition**
- **Request for Disclosure**
- **Plaintiff's First Request for Production to all Defendants**
- **Jury Demand**
- **$55.00**

**Executed:**    <u>11/27/2007</u>  , at    <u>04:04</u>   o'clock   **P.M.**

**Executed at 1019 Brazos Street, 2nd floor, Austin, Travis County, Texas, 78701, by delivering to <u>STERLING CENTERCORP, INC.</u>, by delivering to SECRETARY OF STATE OF TEXAS, by delivering to citations clerk having charge of Corporation Department/Statutory Documents Section of Secretary of State of Texas, <u>YESSENIA VASQUEZ</u>, in person, true copies in duplicate of the above specified civil process having first endorsed on such copies the date of delivery.**

**I am over the age of 18, not a party to nor interested in the outcome of the above numbered suit.**

**Authorized Person:** George Castillo SCH1440
**ASSURED CIVIL PROCESS AGENCY**
**600 Sabine St., # 100, Austin, TX 78701**

**STATE OF TEXAS    }**

## VERIFICATION

**Before me, a notary public, on this day personally appeared the above named Authorized person, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are true and correct. Given under my hand and seal of office on this the 27th day of November, 2007.**

DANA L. MCMICHAEL
Notary Public, State of Texas
My Commission Expires
April 23, 2008

**Notary Public Signature**

PRIVATE PROCESS

"The State of Texas"                NO.  2007-CI-17232

PROMUS HOTEL CORPORATION ETAL
**Plaintiff**
vs.

STERLING USA INC ETAL
**Defendant**
( Note: Attached Document May Contain Additional Litigants. )

**NOTICE**

IN THE DISTRICT COURT

37th JUDICIAL DISTRICT

BEXAR COUNTY, TEXAS

**Citation** Directed to:  STERLING USA INC
BY SERVING THE TEXAS SECRETARY OF THE STATE

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you." Said petition was filed on the 15th day of November , 2007 .
ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 16th DAY OF November A.D., 2007 .

ORIGINAL
PETITION

MARK T BEAMAN
**Attorney**/PLAINTIFF
**address** 301 CONGRESS AVE 1825
AUSTIN, TX 78701-4041

MARGARET G. MONTEMAYOR
District Clerk of Bexar County, Texas
Bexar County Courthouse
San Antonio, Texas 78205

By_____Deputy
BETTY BERMEA

---

### OFFICER'S RETURN

Came to hand _____ day of _____, A.D. _____, at _____ o'clock _____.M.
and executed (not executed) the _____ day of _____, A.D. _____, in _____
at _____ o'clock _____.M. by delivering to _____
in person a true copy of this citation together with the accompanying copy of plaintiff's petition. Served at _____
Cause of failure to execute this citation _____
I traveled _____ miles in the execution of this citation. Fees: _____ Serving citation
$ _____ Mileage _____ Total $ _____
        Badge/PPS #_____     _____

_____ County, Texas
By _____

The State of Texas

NON - PEACE OFFICER VERIFICATION
VERIFICATION OF RETURN (IF NOT SERVED BY PEACE OFFICER)
SWORN TO this _____ day of _____, _____

NOTARY PUBLIC, STATE OF TEXAS

FILE COPY
(DK002)

PRIVATE PROCESS

"The State of Texas"          NO. _____2007-CI-17232_____

PROMUS HOTEL CORPORATION ETAL
Plaintiff
vs.                                                        IN THE DISTRICT COURT

STERLING USA INC ETAL                                      37th JUDICIAL DISTRICT
Defendant
( Note: Attached Document May Contain Additional Litigants. )      BEXAR COUNTY, TEXAS
                                              **NOTICE**
**Citation** Directed to: STERLING CENTERCORP INC
                          BY SERVING THE TEXAS SECRETARY OF THE STATE

"You have been sued.  You may  employ an  attorney.  If you or your  attorney do not
file a written answer  with the clerk who  issued this citation by  10:00 a.m. on the
Monday next  following  the  expiration of  twenty days after you were  served this
citation and petition, a  default judgment  may be  taken against you." Said petition
was filed on the 15th day of November , 2007 .
ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 16th DAY OF November
A.D., 2007 .
ORIGINAL
PETITION

                                              MARGARET G. MONTEMAYOR
                                              District Clerk of Bexar County, Texas
                                              Bexar County Courthouse
MARK T BEAMAN                                 San Antonio, Texas  78205
Attorney/PLAINTIFF
address  301 CONGRESS AVE 1825               By: _____ Deputy
         AUSTIN, TX 78701-4041                        BETTY BERMEA

_____

                              OFFICER'S RETURN

Came to hand _____ day of _____, A.D. _____, at _____ o'clock _____.M.
and executed (not executed) the _____ day of _____, A.D. _____, in _____
at _____ o'clock _____.M. by delivering to _____
in person a true copy of this citation together with the accompanying copy of plaintiff's
petition. Served at _____
Cause of failure to execute this citation _____
I traveled _____ miles in the execution of this citation. Fees: _____ Serving citation
$ _____ Mileage _____ Total $ _____
        Badge/PPS #_____      _____
                                  _____ County, Texas
                                  By _____
The State of Texas
                              NON - PEACE OFFICER VERIFICATION
VERIFICATION OF RETURN (IF NOT SERVED BY PEACE OFFICER)
SWORN TO this _____ day of _____, _____

                              NOTARY PUBLIC, STATE OF TEXAS

                                                   FILE COPY
                                                    (DK002)